Good morning, Your Honors. I'm Daniel Hill. I represent Appellate Patrick Washington in this case. Because the government concedes that neither of the exceptions to the warrant requirement that at least nominally pursued in the District Court apply here, that being the pretentious sweep exception and the inevitable discovery exception, the sole remaining issue, at least in the briefing, is whether the search warrant serves as an independent source in this case, the seizure of the subject firearms, after the firearms were already found a little while earlier in an overbroad search by the patrol officers. So the fact is that for the court, an inevitable discovery of the subject firearms, of course, is a first. So would you say that you agree that there is still a probable cause for a search warrant even without the consent of the tiger? We do, Your Honor. Which brings us pretty much to just the first part of the inevitable both independent source doctrine, excuse me, of that being that the police, when they saw a warrant absent the tainted information, and it's somewhat of a complicated chain of detectives in this case, and so they're responding to the scene. And the reason I say that is because of the four law enforcement officers principally involved in this case, two patrol officers and two responding firearms detectives, only the detectives at the evidentiary hearing testify that they still would have sought a search warrant. Why isn't that enough? Pardon? Why is that not enough? It's not enough for the following reason. And do you have any authority on that? Well, there has to be. The authority is that there has to be a warrant, so long as we've been sought. Right. And are the detectives able to say that? Correct. I guess this is where the rubber meets the road here. Right, Your Honor. So it's a bit complicated, but it goes like this. So the knowledge of the patrol officers to the sergeant, the sergeant to the detectives, the detectives checked in with their supervisor and then made the final decision whether or not to respond to the scene. The district court is correct in saying, and I'm not looking to upend any of the district court's factual findings, he said, I find that the patrol officers would have called their sergeant and requested firearms detectives. We have the testimony from the detectives saying we still would have responded to the scene and sought a warrant. What was not presented to the district court and what was inferred by the district court without any support in the record is that the sergeant still would have fulfilled the patrol officer's request for the firearms detectives. It was the sergeant, the record indicates, who passed along his patrol officer's request to the detectives who then went on to state that they checked in with their supervisor to make sure who approved their responding to the scene. I believe Detective Humphrey said, but Detective Renetti said that his supervisor takes a quick rundown of what the probable cost for a warrant would be before sending his detectives out to the scene. So, there's a missing link when the detectives have to be at the scene. Nothing else in the record supports the seeking of a search warrant in this case, but for the detectives being at that apartment block. What's your best authority for this? There's a lot of missing links in the chain. What's your best? Well, I guess it's just kind of a macro look at the preponderance of the evidence standard. I mean, if the evidence has to preponderate in favor of a search warrant being sought, in this case, and perhaps it's an unorthodox for Las Vegas Metropolitan Police Department, it doesn't really sound in the record either. The patrol officers do not seem to be authorized to seek a warrant here. I mean, in other cases, we can look at Toron Orozco, I believe, where the issue is simply whether the patrol officers who did the unlawful search would have sought a warrant. Let's say we accept that by itself. I mean, what would happen if we sent this back to the district court and they get to put on the sergeant? Is that what would happen? Well, And the sergeant would simply, for us to figure out what the sergeant would say. What's the practical effect of this? I think the practical effect would be sending it back with a reversal on the order and for re-sentencing. And I say that for the following reasons. What do you mean, re-sentencing? I'm going back to, tell me, tell me why maybe you're reporting on that. Well, Nathan, you can move. I'll start from a level above that. There's no, I think Your Honor would agree, there's no additional facts that the district court did consider in this case. It would just be a matter of, would the government be allowed to attempt to meet its burden again? Because that makes two parts. That's what's happened here is the government failed to meet its burden of proof. It didn't establish by a preponderance the evidence that the detectives would have responded to that scene. So, now, there was some discussion back and forth between Mr. Washington and the government as to whether the government was pursuing the equitable discovery doctrine and the independent source doctrine in district court. I think we can both agree, both parties, that the government was pursuing, if not in name and substance, the independent source doctrine. So, the government had an opportunity to elicit the proof that it needed to establish that the detectives would have responded to the scene. So, a remand to the district, a remand for a new evidentiary hearing with the opportunity to find out what exactly the sergeant might say is simply acknowledging the fact that the government failed to meet its burden of the district court with the building and the inference that it was not supported by the record. So, that's not allowed? Is that what you're saying? That's not allowed? What's the authority for that? I'm just trying to figure out. I understand what you'd like, but I'm just struggling with why that's not allowed or why that wouldn't work. With the burden of proof having been failed to meet, I guess it would seem to kind of obviate, really, the entire purpose of the briefs. I mean, you said things back all the time, but it's not clear. You talked earlier about how this isn't clear. Oh, it is. And it might be. I was just looking to you for guidance. Oh, of course not. I think it is clear that the government failed to meet its burden of proof. So, the question is, how many times is the government going to get the case handed back to them to attempt to meet a burden of proof? I mean, there's double jeopardy considerations that would prevent that. In its primal setting, if they fail to meet their burden of proof, that don't, certainly don't attach by case law here in the federal setting. In this setting, the government failed to meet its burden of proof, and Mr. Washington  says it should have been, was, may be, pursuing all along. And in that context, it failed to meet its burden of proof. There's nothing unclear in the district court. The district court doesn't need additional facts to reach a proper conclusion. If we look at Duran-Morosco, the district court found that there was probably cause in the warrant, and therefore, that the independence was not going to apply. And the district court said, well, we're remanding it for development of, would the police have sought the warrant? And there was a reason for that. Is that a good question? I mean, it seems to me, isn't it, at the end of the day, an objective inquiry about whether or not there was probable cause for the warrant? I mean, our case law seems to say, you know, excise the tainted evidence. And the question is whether a neutral magistrate would have exercised the warrant. So why does this, the question of whether or not these detectives or these officers would have sought the warrant in the first place kind of decline? Well, you know, this is just a factor set forth in the test that be. Would that warrant have ever ended up in front of a magistrate, absent the discovery of the tainted information? Would those detectives ever have responded to the scene, had the patrol officers not found those guns and then sighted the Tigers? If they never would have called those detectives after finding those guns in the Sanctuary, there's no warrant would have ever been sought in the case in which it was cased on them. The best case for that is the factor test, and the government sets forth both factors as well, would be the United States versus Toronto or Roscoe. And that one, that sets forth both, A, is there probable cause minus the tainted information, but another consideration being, would that magistrate ever have been present with an application for a search warrant without the discovery of the tainted information? And the BRT case, the Mr. Washington's line, also sets forth a number of considerations in that context, such as how much time was there in between the impermissible search and the supposedly independent source? How big of a role did the impermissibly obtained information play in the subsequent obtaining of a search warrant for the subsequent independent source? I did forget to reserve time for a question. Your Honor, if I may. If this is trying to defer a jury, it was the judge who authorized the jury, and the jury may defer certain facts concerning this chain of evidence, and that's why it includes a magistrate judge who made the same inference. I think, in that context, I would raise Rule 29C or A to say that no reasonable jury could draw that inference because it was presented with no pulse. Why wasn't it the detectives who made the inference? I mean, how can you do this? How can you do this evidence? Because the sergeant of the patrol officers called the detectives and said they found a gun in this apartment, and they need firearms detectives. Now, there's no policy of Metro that was introduced in the district we're talking about in what cases sergeants fill those requests. There was no indication from the detective or the officers, but we have sergeants always fill the request. That's just kind of a pro forma thing. So I would argue in the jury context, no reasonable jury could draw that inference because there was nothing in the record, factually, that supports one way or the other. It's an unsupported assumption that the district court drew that the sergeant would have filled that request, but nothing in the record supports the jury. Thank you, counsel. Thank you. Thank you, sir. Thank you, Chief. Good morning, ma'am. Thank you for calling out on the plaintiffs of the United States. If I can just first very briefly answer your question just almost. About why they need to prove that they would have still sought the warrant. My understanding is that serves as, that removes the basis for the court's motivation for applying the exclusionary rule. That's why they look at it in this policy is to determine whether or not the exclusionary rule is appropriate in the context of. I just looked into that during Orozco, and there is a language in there that supports Mr. Marshall's theory that it's, just to quote, the government has a further hurdle to surmount. The agents might not have supplied for search warrant. In that case, it was remanded for finding to the district with warrant. Do you think that if we accept that as, to follow up on Judge Reggie's question, is that the remedy here? Yes, Your Honor. I mean, the headline was, if the court rules against us in reverse, it would certainly appreciate another opportunity to put in. Well, that's just to appreciate. Is that what would happen? Yes, that's my understanding. We didn't litigate that in our brief. We might have not thought about it until this moment, to be honest with you, Your Honor. So you heard the argument here that Sargent here was crucial in between the responding search and the detectives to secure the warrant. So Sargent didn't testify. What questions? Why didn't Sargent testify? And was it error, and clear error, I guess, that Sargent didn't testify to provide this solution? Yes, Your Honor. A few points. First of all, I think clear error is the key that's there to review this. This is a factual and credibility finding that the magistrate judge made. A finding that said, these officers testified that the patrol officers testified they would have reached out to the firearms unit. The firearms unit testified they would have responded even after this evidence. It was very clearly a factual finding. And so I think on this court reviewing, I think needs to review that for clear error, meaning if there's two acceptable views of the evidence, the government wins. My second point is it's not entirely clear to me from reading the record that it was actually the Sargent that made the call. I read through the entire record again yesterday, and it's ambiguous as to who exactly made the call. If you look at ER. Would that help you if it's not really clear that it was the Sargent? How do you make it more clear? Ultimately, I don't think it resolves the question at the end of the day. I think the real question is, I mean, the court is aware of this, the real question is, without that evidence, what would have happened? What would the officers have done? And they are now here claiming that we didn't care from the Sargent. There's no way we made this showing. The fact is the patrol officers very clearly testified we would have sought approval. We would have done everything we could do to get these firearms officers out here, the firearms officers both clearly testified. If we just had all of this information except for McDonough's voice, we still would have responded. And I should point to this in my brief. In ER 63, there's some quite helpful testimony from one of the firearms officers on cross-examination where he's being asked, how often do you respond to domestic violence calls? Numerous times. How often do you respond to just a bullet, not a gun? Numerous times. And so the evidence on that was clear. With respect to the firearms officer, the other piece of evidence that I wanted to point out is in ER 12, this officer's further testifying. And he says, excuse me, in ER 13, he says, I'm with that information, that information meaning everything besides the guns. We still requested the firearms unit to respond to the scene. Officer Sperling says, they would have at least been notified. They would have had their decision. It's their call-out, hey. And then he gets into whether or not Sperling's not necessarily qualified to talk about what the firearms officers would have done. But he very clearly testified. If we had known the facts, if we had known the firearms unit officers would have been notified. I mean, I understand the argument about the T of every single inference, but I just don't think that that is required in the case law. What the case law requires is a showing by the plunderers of the evidence that the officers would have sought the warrant. And I don't think that the magistrate made a clear error in making that determination. So I thought that this was like, let me see if I understand your position. Your position is that the factual findings, even though there was no conclusion of law as to the independent source doctrine, that the factual findings support your conclusion, and need not be considered for appeal because it's not a question of law if we assume that the factual findings are accurate as I refer to them. That's correct, yes. And it is unfortunate that the confusion over the terms, unfortunately this court recently clarified the difference in the decision and hopefully going forward that will not be a sort of confusion. But if the court has other questions, I'd be happy to address them. Thank you. Thank you, counsel. We'll give you two minutes. Two minutes, your honor. Thank you so much, your honor. I'll just point, again, I just borrowed it from the government's brief. If I can be so bold, in the United States versus Hill 55 after 479 would be another example of where this court was looking at all the evidence. Was there a follow-up question? I'd like to take your point on that. Okay. Here's my follow-up question. Okay. Which is, why aren't the findings adequate in this case? I mean, what the case law says is that the magistrate judge or the court needs to make findings. Here there is a finding that they want to stop. So I understand your argument for this complaint, but why is it, if you have it clarified, why is it that special? I think, with all due respect to the government, I'm not really in the location about that. And any factual findings, consistent legal conclusions, that is not supported by the record. Nobody would dispute that the officers would have called their sergeant. That is a finding he made. Nobody would dispute that if the sergeant did, in fact, then call the detectives, that they would have responded. Those are the two findings that the judge made. But what? Why is there a reasonableness in this? The sergeant would have not done anything different. I don't understand that, especially in light of everything else that played out. I mean, and I think, you know, do we look at this on a micro level or on a macro level? It seems like on factual findings we have to give difference to the Supreme Court. Because I'm not so sure the district court realized that there was this requirement. There was an intermediary, Nathan Lockyer, for example. I mean, the government states that it was unclear. There are a bunch of choices for Humphreys, who's actually the one who called the sergeant. On page 31, he says, I called the sergeant and requested firearms detectives. On page 34, he says, if I hadn't found those guns, I still would have called my sergeant and requested those firearms detectives. The reason we can't infer that that sergeant would have then called the detectives, if you aren't told, hey, we just found some guns in this apartment, is because there was nothing, there was no testimony saying that firearms detectives on the 4th of July during call-out paid. In the middle of the night, when Detective Renetti, in contradiction of Detective Humphrey, said it's very unusual for firearms detectives to respond to domestic violence calls, now, even the records and reports didn't inference, but I guess the district court couldn't have guessed that the sergeant would have called the detectives, even had they not found them. No reason to infer, and I guess I'm just trying to figure out why isn't that a reasonable inference they could draw? Because nothing was presented to the district court to allow that inference. No policy of Metro C, that it's very common. No policy for firearms detectives. OK, but is it an MFN, that's really what Humphreys does, is that he would have requested, you know, the FUI and detectives to come and understand, I mean, really drilling down quite a bit here. Because we know from when they say we would have requested the firearms, we know what that means in their testimony. I would have called my sergeant and told him, and if they didn't tell that sergeant, hey, we found guns just now. There's nothing in the record of what would that sergeant have done. There's nothing to infer that he would have then called the detectives. We have no idea what he would have done if he weren't presented with any policy or practice or any testimony from the sergeant. Thank you. Thank you. Thank you. This is very helpful. We will, in case you disagree, we submit it for decision.
judges: Thomas, Murguia, Baylson